## KIXMILLER v. BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY.

[No. 8,814. Filed February 3, 1916.]

1. EASEMENTS.—*Conveyances.*—*Effect.*—Where a deed conveying land to be used for a factory site by its terms also granted a right of way over a strip lying between the land conveyed and the right of way of a railroad company, the right acquired was in the nature of an easement appurtenant to the lands conveyed and passed by successive mesne conveyances of the land. p. 691.

2. EASEMENTS.—*Construction.*—*Construction by Parties.*—Where the grantor of land for a factory site, together with a right of way over a strip still retained by grantor, silently acquiesced in the acts of the grantee and another in procuring a side track to be constructed over such strip and used for shipping purposes of the factory erected on the land conveyed, the facts were sufficient to characterize the easement granted as being broad enough in the contemplation of the parties to include the right to cause the side track to be laid and used as indicated. p. 692.

3. EASEMENTS.—*Change in Easement.*—*Easement Appurtenant.*— An easement appurtenant is a burden upon the servient estate which can not be used for a purpose beyond that which was in contemplation of the parties at the time of its creation, nor for the benefit of lands other than those to which it adheres, except by consent of the owner of the servient estate. p. 692.

4. EASEMENTS.—*Easement Appurtenant.*—*Severance.*—*Change.*—An easement appurtenant can not be severed from the estate to which it is attached and be made the subject of an independent conveyance, nor can it be changed to an easement in gross by any act of the owner of the dominant estate. p. 693.

5. ESTOPPEL.—*Equitable Estoppel.*—*Use of Easement.*—Where the owner of land conveyed a portion thereof to be used for a factory site, and also granted a right of way over an adjoining strip between the land conveyed and the right of way of a railroad company, on which strip a side track was subsequently built, and after the building of such side track grantor sold the remaining land to plaintiff, including the strip on which the side track was located, and plaintiff platted the land so purchased by him for factory sites,

and after a conveyance by the grantee of the right of way to the railroad company, the latter extended the side track on a way laid out by plaintiff, to which plaintiff made no objection, plaintiff was estopped from contesting the right to use the strip of ground over which the side track was laid by the railroad company for the benefit of a manufacturing corporation located on land laid out by him, and which was inaccessible but for such side track. pp. 693, 696.

6. APPEAL.—*Review.*—*Decision.*—*Inferences.*—In support of the findings, it is the duty of the court on appeal to indulge all inferences that may be reasonably deduced from the evidence. p. 695.

7. EASEMENTS.—*Occupancy.*—*Right to.*—Where a manufacturing company is entitled to use a strip of ground for a right of way, its occupancy by a railroad company as agent for its benefit is not unlawful. p. 696.

From Knox Circuit Court; *B. M. Willoughby,* Judge.

Action by Simon Kixmiller against the Baltimore and Ohio Southwestern Railroad Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Shuler McCormick* and *Wm. Kixmiller,* for appellant.

*W. R. Gardiner, C. K. Tharp, C. G. Gardiner, W. C. Johnson* and *Edward Barton,* for appellee.

CALDWELL, J.—Appellant brought this action to recover from appellee the possession of a narrow tract of real estate, situate along the north side of the latter's right of way in the city of Vincennes, and also for damages for the alleged unlawful holding of such real estate for a number of years. The lands described in the first paragraph are 25 feet wide and 7.63 chains long, containing .28 of an acre, more or less. The strip described in the second paragraph is a part of that described in the first paragraph. It is 20 feet wide and 160 feet long. The eastern terminus is the same as that of the entire strip, and its center line is the continuation of the center line of a sidetrack extending from the west end of the entire strip to the west end of the strip

described in the second paragraph of complaint. Appellee filed an answer in general denial, and the cause being at issue was tried by the court. The decision and judgment were in favor of appellee. On this appeal, appellant presents the single question of the sufficiency of the evidence to sustain the decision.

The material part of the evidence is to the following effect: January 21, 1892, the Vincennes Coal Company, under which both appellant and appellee claim, was the owner of a large tract of land, lying along the north line of the right of way of the Ohio and Mississippi Railroad Company, appellee's predecessor, which tract included the various parcels of land hereinafter mentioned. On that day the coal company conveyed to the Vincennes Board of Trade by warranty deed a two-acre tract situated along the north side of the strip described in the first paragraph of complaint, and being of the same length as the strip. Only such strip intervened between the right of way and the lands conveyed. The strip of ground was not conveyed, but by the terms of the deed a way over it was granted as indicated by the following language contained in the deed: "With a right of way over and along a strip of ground twenty-five feet in width between the above described land and the right of way of the Ohio and Mississippi Railway Company." The board of trade purchased the two-acre tract for the purpose of locating a spoke factory on it, and to that end, the next day, January 22, 1892, conveyed the tract and also the right of way over the 25-foot strip to Charles L. Wayman. Among the inducements offered to Wayman to establish the spoke factory on the two-acre tract was the agreement of the board of trade to procure the railroad company to extend a sidetrack along the strip.

Thereupon, in January, 1892, the railroad company, by arrangement with the board, constructed a sidetrack branching from its main line at the west end of the strip and extending eastward over it to a point 160 feet west of the east end. At the same time Wayman, associated with others, commenced to build a spoke factory on the two-acre tract, and on its completion in a few weeks, proceeded to operate it. The Wayman Company and its successor, The Security Spoke and Manufacturing Company, continued to operate the factory until 1902 or 1903, when a part of the plant was destroyed by fire. The sidetrack was used in shipping raw material to and the finished product from the factory.

In May, 1893, appellant purchased from the coal company a tract of land adjoining the two-acre tract on the east and abutting on the north line of the railroad right of way. The deed executed by the coal company to him included in the conveyance the 25-foot strip south of the two-acre tract, but with a reservation expressed in the following language: "Subject to the right of way over said ground granted by said Vincennes Coal Company to the Vincennes Board of Trade, their successors, and assigns by its deed", etc. At the time of this conveyance, the sidetrack over the strip was being used for transportation purposes in connection with the operation of the spoke factory. In May, 1896, there was duly placed on record in the recorder's office of Knox County a plat of an addition known as the "Manufacturers' Subdivision" adjoining the two-acre tract on the west and the railroad right of way on the north. The plat designated as Hack Street, a strip of ground 20 feet wide immediately north of the right of way and abutting against the 25-foot strip. In 1901, appellant caused the lands

so purchased by him to be platted as a subdivision, and May 12, 1904, caused the plat to be recorded. This plat designated, as Hack Street, a strip of ground 25 feet wide and extending the full length of the plat and abutting on the north line of the right of way of the railroad company. This strip is an extension of the 25-foot strip south of the two-acre tract.

In 1903, the Vincennes Canning and Packing Company, a corporation, was organized. Appellant was a stockholder and at one time a director in this company. To be used as a factory location, it purchased from appellant lots 1 to 5, inclusive, in the southwest corner of his subdivision and abutting on the spoke factory two-acre tract, and the strip south of it. In 1904, it built its factory on these lots. Under date of July 8, 1904, the canning company contracted with appellee to extend the spoke factory sidetrack along the 25-foot strip eastward 160 feet to the canning factory property, and thence a distance over the extension of the strip designated as Hack Street along the south side of such property, and to that end the canning company agreed to procure the necessary right of way. On the same day, the Security Spoke and Manufacturing Company executed to appellee its warranty deed purporting to convey the strip of ground 160 feet long and 20 feet wide, described in the second paragraph of complaint, for so long a time as the contract executed the same day should remain in force. Appellee thereupon extended the sidetrack the distance of 160 feet over said strip, to the canning factory property. Appellee thereafter used the entire sidetrack, including the extension thereof, in transporting raw material to and the finished product from the canning factory, continuously until 1907 when the Dyer Bean Company

succeeded the canning company. The former continued to operate the factory and to utilize the sidetrack for shipping purposes. During all the time involved, the sidetrack afforded the only means of shipment to and from the factory. The evidence showed its business to be growing. In the year immediately preceding the trial, it handled 860 carloads on the sidetrack.

It is a reasonable inference from the evidence that both appellant and the canning company of which he was a stockholder and director as indicated, in the building of the plant and the sale and purchase of the lots to that end, contemplated the extension of the sidetrack, as it was very soon thereafter extended, and its use for shipping purposes in connection with the operation of the factory. During all the time involved, appellant lived one-fourth of a mile west from the sidetrack and, during a part of the time, he operated a brickyard near thereto. The evidence is sufficient to support a very strong inference that he had knowledge, at the time, that the sidetrack was being extended and of the purpose of such extension and the contemplated use and the use actually made of it throughout the succeeding years. Appellant does not deny these propositions. This action was commenced in September, 1911. He does not claim that he objected to the extension of the sidetrack. He first objected to its use shortly before commencing the action.

Proceeding to determine the sufficiency of the evidence, it is conceded by the parties that the deed by which the coal company conveyed to the board of trade the two-acre tract of land, by its terms granted also a right of way in the nature of an easement appurtenant to the lands conveyed over the 25-foot strip, and that by successive mesne conveyances, the Security Spoke and

Manufacturing Company became the owner of such tract with the easement appurtenant thereto. The concession that such easement was appurtenant or attached to the land and that it passed as an incident in the conveyance thereof rather than that it was in gross as a mere individual or personal right in the strip of land disconnected from the ownership of the tract, is in harmony with the authorities. *Hoosier Stone Co.* v. *Malott* (1891), 130 Ind. 21, 29 N. E. 412; *Louisville, etc., R. Co.* v. *Malott* (1893), 135 Ind. 113, 34 N. E. 709; Jones, Easements §18, *et seq;* 14 Cyc 1141, 1184.

2. The two-acre tract was conveyed by the coal company to the board of trade, and by the latter to Wayman, to be used as a factory site. Wayman and his associates, very soon after acquiring title, with the active assistance of the board of trade, and at least the silent acquiescence of the coal company which owned the fee in the servient estate, procured to be constructed over the latter the sidetrack, and commenced and continued its use for shipping purposes in connection with the building and operating of the spoke factory. These facts are sufficient to characterize the easement granted as being broad enough in the contemplation of the parties to include the right to cause the sidetrack to be laid and used as indicated. *Lake Erie, etc., R. Co.* v. *Michener* (1889), 117 Ind. 465, 20 N. E. 254; 14 Cyc 1201.

3. An easement appurtenant is a burden upon the servient estate. The owner of the dominant estate can not by any act of his own, independent of the consent of the owner of the servient estate, use the easement or authorize it to be used for the benefit of any lands other than those to which it adheres, or without such consent, broaden the use beyond what was within the contemplation

of the parties at its creation. Otherwise the burden upon the servient estate would thereby be increased without the consent of the owner thereof. *Hoosier Stone Co.* v. *Malott, supra; Louisville, etc., R. Co.* v. *Malott, supra;* Jones, Easements §§360, 363, 368; *Wood* v. *Woodley* (1912), 41 L. R. A. (N. S.) 1107 note; 14 Cyc 1209. Such an easement can not be severed from the estate to which it is attached and made the subject of an independent conveyance; nor can an easement appurtenant by any act of the owner of the dominant estate be changed into an easement in gross. *Moore* v. *Crose* (1873), 43 Ind. 30; *Wilson* v. *Ford* (1913), 209 N. Y. 186, 102 N. E. 614; *Reise* v. *Enos* (1890), 76 Wis. 634, 45 N. W. 414, 8 L. R. A. 617; 14 Cyc 1185.

It follows that as against appellant, who at that time owned the fee to the 25-foot strip, the deed executed by the Security Spoke and Manufacturing Company to appellee July 8, 1904, purporting to convey the strip of ground 160 feet long abutting at its east end on the premises owned by the canning company, was not effective to extend to the latter premises the easement with which the strip of ground described in the deed was burdened; or to create in such strip of ground an easement in gross for the use and benefit of the owners of the canning factory property, or to amount to authority in appellee to enter upon such strip of ground, and along it to extend the spoke factory sidetrack to the canning factory property, for its use and benefit or for the use and benefit of the owners of such property. It is said of such a deed that it is either void, or that it will extinguish the right theretofore existing in the grantor. *Phillips* v. *Rhodes* (1843), 48 Mass. 322. It is apparent that the deed was void in the sense that it was not effective to convey title to appellee, or to grant the use

of the strip of ground for right of way purposes for the benefit of the canning company property. It is conceded that at the time of the execution of the deed, the easement in the strip of ground was in force as appurtenant to the two-acre tract owned by the spoke company, the grantor in the deed. As such owner, the spoke company had a right to the use of the easement in connection with the occupancy of such tract, unimpaired by any act of the owner of the fee or others. Such right might constitute a barrier to the creation of an easement over the strip for the benefit of the canning company property. Hence, in order to accomplish the latter result, it may have been necessary either to induce the spoke company to abandon its easement or procure its consent thereto. The deed was executed as a part of the proceeding had, preparatory to the extension of the sidetrack. It, therefore, follows that the fact of the execution of the deed might be considered as some evidence indicating either a purpose to abandon the easement, or the consent of the spoke company that the strip might be used for the benefit of the canning company. An inference to either of these effects might reasonably be deduced from the fact of the deed under the circumstances. Since the deed was executed to appellee rather than to appellant, the owner of the fee, the latter is the more reasonable deduction. Either of these deductions is in harmony with the decision below, and, it is, therefore, immaterial which we presume to have been made by the trial court. In either case the spoke company as an opposing factor was eliminated.

Turning again to the evidence, appellant purchased the grounds subsequently platted by him, and also the 25-foot strip, subject to the spoke company's easement. This strip abutted directly on the grounds purchased. Unexplained, it is reason-

able to presume that the strip was purchased for right of way purposes to be used in connection with such grounds. Other facts are in harmony with such presumption. Thus the sidetrack extending along the strip to within 160 feet of such grounds, was in active use. Hack Street having been laid out as a western extension of the strip, subsequently in platting his grounds appellant indicated Hack Street as an eastern extension of the strip. These facts are not in accord with an assumption that appellant was holding the strip for some personal purpose disassociated from his platted grounds. Under such circumstances, he sold the five lots to the Vincennes Canning and Packing Company for factory purposes. He was interested in such company as a stockholder and director. The factory site had no direct railroad connection, whereupon the sidetrack by the procurement of the company was immediately extended as indicated, and under circumstances sufficient to charge appellant with knowledge of the fact. The sidetrack was thereafter for a number of years used for the benefit of the canning company, and, thereafter, for the benefit of its successor. Appellant objected neither to the extending nor the use of the sidetrack. As we have indicated, these circumstances are sufficient foundation for an inference that in the sale and purchase of the lots, the parties contemplated the extension of· the sidetrack and its use for the benefit of the factory to be erected and operated on the lots, and that appellant at least by implication assented thereto. It is a fair inference that on· the faith of such implied consent and that the sidetrack might be so extended and used, the lots were purchased, the plant built and equipped, and that an important business has

6. been developed. It is our duty in support of the decision below to indulge all inferences

that may be reasonably deduced from the evidence. In our judgment, under the evidence, appellant is estopped from contesting the

5. right to use the strip of ground described in the complaint, and the sidetrack thereon for the benefit of the canning factory property, now the Dyer Bean Company. See the following: *Lake Erie, etc., R. Co.* v. *Michener, supra; Messick* v. *Midland R. Co.* (1891), 128 Ind. 81, 27 N. E. 419; *Campbell* v. *Indianapolis, etc., R. Co.* (1887), 110 Ind. 490, 11 N. E. 482; *Indianapolis, etc., Traction Co.* v. *Arlington Tel. Co.* (1911), 47 Ind. App. 657, 95 N. E. 80; *Jann* v. *Standard Cement Co.* (1913), 54 Ind. App. 221, 102 N. E. 872; *Pierce* v. *Cleland* (1890), 133 Pa. St. 189, 19 Atl. 352, 7 L. R. A. 752; *Curtis* v. *LeGrande, etc., Co.* (1890), 10 L. R. A. 484, note.

The Dyer Bean Company, as the successor of the Vincennes Canning and Packing Company having the right to use the strip of ground as in-

7. dicated, its occupancy by appellee as agent for the benefit of the Dyer Bean Company is not unlawful. *Louisville, etc., R. Co.* v. *Malott, supra; Spencer Stone Co.* v. *Sedwick* (1915), 58 Ind. App. 64, 105 N. E. 525; Jones, Easements §368.

The evidence is sufficient to sustain the decision, and the judgment is affirmed.

Note.—Reported in 111 N. E. 401. As to what is equitable estoppel, see 134 Am. St. 172. See, also, under (1) 14 Cyc 1140, 1184; (2) 14 Cyc 1201; (3) 14 Cyc 1206, 1209; (4) 14 Cyc 1185; (5) 16 Cyc 765, 791; (6) 3 Cyc 308; (7) 14 Cyc 1208.